UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| DOUG GILBERT and <br> TOMMY GILBERT, as parent and <br> next of kin to EDDIE GILBERT, <br> <br> Plaintiffs, <br> <br> WORLD WRESTLING ENTERTAINMENT, <br> INC., ESPN INC., and ESPN CLASSIC, INC. <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> )     Civil Action No. 1:15-cv-1086 <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF FACTS AND LAW IN FURTHER SUPPORT OF DEFENDANTS ESPN, INC. AND ESPN CLASSIC, INC.'S MOTION TO DISMISS THE COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants ESPN, Inc. and ESPN Classic, Inc. (collectively, "ESPN") respectfully submit this Memorandum of Facts and Law in Further Support of their Motion to Dismiss the Complaint.

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs, Doug Gilbert and Tommy Gilbert, as parent and next of kin to Eddie Gilbert ("Plaintiffs"), have sued ESPN and Defendant World Wrestling Entertainment, Inc. ("WWE") (sometimes collectively, "Defendants") for allegedly violating their rights of privacy and/or publicity. Such claims are wholly unfounded and must be dismissed in their entirety.

Plaintiff Doug Gilbert and the decedent, Eddie Gilbert, were professional wrestlers who performed for a number of different wrestling associations and leagues in the late-1970s and 1980s. (Compl. ¶¶ 10-13.) In their Complaint, Plaintiffs allege, with respect to ESPN, that "ESPN has been airing on television, the internet, and other media footage of Doug Gilbert's and/or Eddie Gilbert's past wrestling matches for which neither ESPN nor the wrestling associations ever obtained permission or the right to use the Gilberts' names or likenesses." (*Id.*

¶ 17.) Plaintiffs assert a single cause of action against ESPN and WWE, alleging that "Defendants have violated the Gilberts' right of privacy and/or publicity by using their names and likenesses without permission or any license in order to obtain profits." (*Id.* ¶ 24.)

Plaintiffs' claims against ESPN should be dismissed for three reasons. First, Plaintiffs' claims are preempted by the Copyright Act. *See* 17 U.S.C. § 301(a). Copyright preemption applies here because the works forming the basis of Plaintiffs' right of privacy/publicity claim—ESPN's "television, internet, and other media footage"—are within the scope of the subject matter of copyright, and the rights at issue—ESPN's "airing" or public performance or display of such "footage"—are equivalent to those exclusive rights within the scope of federal copyright protection. *See id.* The Eighth Circuit just affirmed a copyright preemption dismissal of similar claims against ESPN in *Ray v. ESPN, Inc.*, No. 14-2117, 2015 WL 1810486 (8th Cir. Apr. 22, 2015). In *Ray*, the court affirmed the federal district court's dismissal of the plaintiff's right of privacy and right of publicity claims on copyright preemption grounds. *Id.* at *1, 4 (discussed further in Part IV.A below).

Second, Plaintiffs' claims against ESPN must be dismissed because Tennessee's right of publicity statute, Tennessee Code Annotated Section 47-25-1101 *et seq.*, is narrowly drawn and <u>only</u> prohibits unauthorized use of another's name, image, or likeness in advertising, which is not alleged in this action. Tennessee federal courts have consistently rejected right of publicity claims that fail to allege the use of the plaintiff's name, image, or likeness specifically in connection with any advertisement. *See, e.g.*, *McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461, at *12 (W.D. Tenn. May 9, 2011).

Third, Plaintiff's claims against ESPN are barred by the First Amendment of the United States Constitution (the "First Amendment") and the Tennessee Constitution. Specifically, the

right of publicity does not ordinarily include the use of an individual's name, image, or likeness for entertainment purposes or for the purposes of communicating information or expressing ideas. *See Ruffin-Steinback v. dePasse*, 267 F.3d 457, 461 (6th Cir. 2001). Further, when balancing two important factors courts look at when analyzing First Amendment protection—(i) whether the challenged content is commercial speech; and (ii) whether it relates to a matter of public interest—it is clear that the airing of wrestling broadcasts at issue in this matter is afforded strong First Amendment protection because it is not commercial speech and it involves matters of public interest, namely in that the individuals depicted are entertainers who have voluntarily injected themselves into the public eye.

Thus, for the above three reasons, Plaintiffs' Complaint should be dismissed with prejudice.

## II. PROCEDURAL HISTORY

Plaintiffs filed their Complaint in the Chancery Court of Henderson County, Tennessee (the "State Court") on March 11, 2015. Plaintiffs served ESPN and WWE with the Complaint on March 17, 2015. ESPN and WWE, jointly, removed the State Court action to this Court on April 15, 2015 (Docket 1). On April 20, 2015, ESPN and WWE filed an unopposed joint motion for an extension of time in which to respond to Plaintiffs' Complaint (Docket 8). That motion was granted on April 21, 2015, allowing for an extension of time until May 6, 2015 for Defendants to respond to the Complaint (Docket 10).[1]

---

[1] ESPN and WWE are filing separate Rule 12(b)(6) motions to dismiss on the same or similar grounds. Thus, to the extent consistent with ESPN's arguments contained herein, ESPN incorporates all arguments and supporting authority contained in WWE's Memorandum of Law in Support of Motion to Dismiss (Docket 21-1).

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 12(b)(6) states that a complaint may be dismissed for failure to state a claim upon which relief can be granted.  In considering a Rule 12(b)(6) motion, the Court "must construe the complaint in a light most favorable to the plaintiff, and [it must] accept all of [the] factual allegations as true."  *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 525-26 (6th Cir. 2007) (internal citations omitted).  That said, "more than bare assertions of legal conclusions is . . . required to satisfy federal notice pleading requirements."  *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988).  In other words, "the reviewing court should determine what allegations within the complaint can be classified as 'legal conclusions' and disregard them for purposes of deciding the motion."  *Knittel v. Dist. Dir., Area 8, I.R.S.*, No. 09-cv-1021, 2009 WL 3166913, at * 1 (W.D. Tenn. July 30, 2009).  The "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Hunter v. Sec'y of the U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009).

The U.S. Supreme Court readdressed the pleading requirements under the Federal Rules in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and again in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also United States ex rel. Bledsoe v. Community Health Sys., Inc*., 501 F.3d 493, 502 (6th Cir. 2007) (stating that to survive a motion to dismiss, a complaint must contain enough facts to state a claim for relief that has facial plausibility).  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). When a complaint contains facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. A complaint will not suffice if it contains "naked assertions" without "further factual enhancement." *Id.* at 557 (emphasis added); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (stating that, although the factual allegations set forth in a complaint need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief" (emphasis in original)).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires a reviewing court to draw on its judicial experience and common sense." *Trs. of Detroit Carpenters Fringe Benefit Funds v. Patrie Constr. Co.*, Nos. 13-2484, 14-1047, 2015 WL 873504, at *3 (6th Cir. Mar. 3, 2015). In conducting this analysis, "[t]he court should not assume facts that could and should have been pled, but were not." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 522 (6th Cir. 2008).

## IV. ARGUMENT

A. PLAINTIFFS' CLAIMS AGAINST ESPN ARE PREEMPTED BY THE COPYRIGHT ACT.

Plaintiffs' claims that ESPN violated their right of privacy and/or publicity[2] by "airing on television, the internet, and other media footage of Doug Gilbert's and/or Eddie Gilbert's past

---

[2] Though Tennessee recognizes a separate right of publicity and right of privacy, *see State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell*, 733 S.W.2d 89, 93-95 (Tenn. Ct. App. 1987), here, Plaintiffs do not distinguish between the two, merely calling their single cause of action a "right of privacy/publicity" in their Complaint, (Compl. § 25).
*(footnote continued on following page …)*

wrestling matches" are preempted by the Copyright Act, and thus, must be dismissed. *See* 17 U.S.C. § 301(a); *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004); *Patel v. Hughes*, No. 3:13-0201, 2014 WL 4655285, at *6 (M.D. Tenn. Sept. 16, 2014); *Stanford v. Caesars Entm't, Inc.*, 430 F. Supp. 2d 749, 754-55 (W.D. Tenn. 2006). Section 301 of the Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium or expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this [Act]." 17 U.S.C. § 301(a). Broadcasts of wrestling events are copyrighted audiovisual works, and Plaintiffs do not (and could not plausibly) allege that ESPN lacks the right under copyright law to distribute their broadcasts. Nonetheless, Plaintiffs seek to assert state law publicity rights in a manner that would fundamentally negate and disrupt the ability of copyright holders to exploit their copyrights, by prohibiting the airing of wrestling events in which they appeared unless and until they consent. Copyright and federal supremacy principles preclude that result.

The sweep of copyright preemption "is unusually broad." *Ritchie v. Williams*, 395 F.3d 283, 286 (6th Cir. 2005); *see also Wells v. Chattanooga Bakery, Inc.*, No. M2013-00935-COA-R3-CV, 2014 WL 1259153, at *3 (Tenn. Ct. App. Mar. 25, 2014). Specifically, the Copyright Act preempts all state law claims that (i) fall within the general subject matter of copyright and (ii) involve rights granted under state law that are "equivalent" to any of the exclusive rights

---

*(… footnote continued from previous page)*
Regardless, even if treated separately, because Plaintiffs' right of privacy claim is predicated upon the same single allegation as their right of publicity claim (*i.e.*, the "airing" of past wrestling matches "on television, the internet, and other media"), it is also preempted under the Copyright Act. *See infra* Part IV.A.

within the scope of federal copyright protection. *Stromback*, 384 F.3d at 300.[3] The recording, airing, and/or broadcasting of wrestling events by ESPN satisfies both prongs of the copyright preemption test.

    1.    <u>Plaintiffs' Claims Fall Within the General Subject Matter of Copyright</u>

The Copyright Act, 17 U.S.C. § 101 *et seq.*, defines the subject matter of copyright as "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device" including "audiovisual works." 17 U.S.C. § 102(a). "A work consisting of sounds, images, or both, that are being transmitted, is 'fixed' for purposes of this [Act] if a fixation of the work is being made simultaneously with its transmission." *Id.* § 101. As such, recordings and/or broadcasts of live wrestling events fall within the subject matter of copyright. *See, e.g.*, *Ray v. ESPN, Inc.*, No. 13-1179-CV-W-SOW, 2014 WL 2766187, at *2 (W.D. Mo. Apr. 8, 2014), *aff'd*, 2015 WL 1810486, at *2-3; *Somerson v. McMahon*, 956 F. Supp. 2d 1345, 1353-54 (N.D. Ga. 2012); *see also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986) (holding that the "subject matter" prong of copyright preemption was satisfied because "[t]he works in which the Players claim rights are the telecasts of major league baseball games," which are "fixed in

---

[3] The Sixth Circuit has further refined the analysis for the "equivalence" prong of the test:

> Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Stromback,* 384 F.3d at 301 (citation omitted). The Sixth Circuit further provides that "[t]he existence of an extra element precludes preemption only where the element changes the nature, rather than the scope, of the action." *Id.*

tangible form because they are recorded simultaneously with their transmission and are audiovisual works").

In *Ray*, former wrestler Steve "Wild Thing" Ray sued ESPN for, among other causes of actions, (i) invasion of privacy; (ii) misappropriation of name; and (iii) infringement of right of publicity, arising from ESPN's airing of recordings of the plaintiff's past wrestling performances. *Ray*, 2014 WL 2766187, at *1. In granting ESPN's Rule 12(b)(6) motion to dismiss on copyright preemption grounds, the district court stated, with respect to the "subject matter" prong, that "[o]nce plaintiff's wrestling performances were captured on film, they became 'fixed in [a] tangible medium of expression' that could be 'perceived, reproduced, or otherwise communicated' through 'the aid of a machine or device.' Therefore, the video performances fell within the subject matter of copyright law." *Id.* at *2 (citations omitted); *see also Ray*, 2015 WL 1810486, at *2 (affirming the district court's holding by stating that "[t]he filming of Ray's wrestling performances clearly generated an 'original work[] of authorship,' that was 'fixed in a tangible medium of expression' and could be 'perceived, reproduced, or otherwise communicated'" and, thus "are within the subject matter of copyright law") (citations omitted).

Similarly, in *Somerson*, former wrestler "Pretty Boy" Doug Somers sued WWE and certain of its executives for, among other causes of action, violating his right of privacy and/or publicity by using recorded footage of his wrestling performances on WWE's video on demand channel and in WWE-released DVDs. *Somerson*, 956 F. Supp. 2d at 1348, 1351. In granting WWE's Rule 12(b)(6) motion to dismiss on copyright preemption grounds, the court stated, with respect to the "subject matter" prong, that "the video recordings of plaintiff's wrestling activities fall within the subject matter of copyright . . . . The video recordings of plaintiff's wrestling are

part of a larger audiovisual work showing other wrestling matches and commentary throughout different time periods. Therefore, the video recordings of plaintiff are at a minimum audiovisual works falling within section 102 or part of a compilation as defined by section 103." *Id.* at 1353.

Here, Plaintiffs' right of privacy and/or publicity claims against ESPN are based solely on ESPN's alleged "airing on television, the internet, and other media footage" of Plaintiffs' past wrestling performances. (Compl. ¶ 17.) Therefore, Plaintiffs have pleaded that ESPN's allegedly wrongful activity consists of nothing more than airing recorded performances of wrestling events through various mediums. Such recordings are clearly within the subject matter of the Copyright Act and are afforded protection thereunder. *See Ray*, 2014 WL 2766187, at *2, *aff'd*, 2015 WL 1810486, at *2-3; *Somerson*, 956 F. Supp. 2d at 1353. Thus, the "subject matter" prong of the copyright preemption test has been met.

    2.    <u>Plaintiffs' Claims Involve Rights Granted Under State Law that are Equivalent to the Exclusive Right of Public Performance or Display Within the Scope of Federal Copyright Protection.</u>

Under the "equivalence" prong of the copyright preemption test, "[t]he state law right at issue is equivalent to any of the exclusive rights under § 106 if 'the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights.'" *Stanford*, 430 F. Supp. 2d at 758 (quoting *Stromback*, 384 F.3d at 301). Rights of publicity are "equivalent" to exclusive rights within the scope of federal copyright protection because both sets of rights constitute a "right to exclude"—to prohibit use of the covered material without the right-holder's consent. *See Patel*, 2014 WL 4655285, at *6-8. Here, Plaintiffs' right of privacy/publicity cause of action against ESPN seeks to prevent ESPN from exercising its exclusive rights under Section 106 of the Copyright Act in its wrestling footage, including, in

particular, the "airing" or public performance or display of such footage on "television, the internet, and other media."[4]

As with the "subject matter" prong of the copyright preemption test, both the *Ray* and *Somerson* cases are directly on point with respect to the "equivalence" prong. In *Ray*, in finding equivalency between the plaintiff's right of publicity claims and the exclusive rights provided for in Section 106 of the Copyright Act, the federal district court held that "[p]laintiff's wrestling performances were part of the copyrighted material, and his likenesses could not be detached from the copyrighted performances that were contained in the films. . . . [P]laintiff has not alleged his name and likeness were used to promote or endorse any type of commercial product. Rather, plaintiff complains about ESPN airing wrestling performances that have been captured on video. Thus, plaintiff's complaints are based solely on ESPN airing video recordings depicting him in a 'work of authorship,' which is plainly encompassed by copyright law." *Ray*, 2014 WL 2766187, at *5. In affirming the federal district court's finding of equivalency, the Eighth Circuit held that "the crux of Ray's case is that ESPN re-telecast Ray's filmed performances," and "because Ray's state-law rights have been 'infringed by the mere act of reproduction, performance, distribution or display' of his performances, his state-law rights are equivalent to the exclusive rights 'within the general scope of copyright.'" *Ray*, 2015 WL 1810486, at *4 (quoting *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993)).

---

[4] Section 106 of the Copyright Act gives the copyright owner the exclusive rights, in the case of audiovisual works, to, among other things, "<u>perform</u> the copyrighted work publicly" and "to <u>display</u> the copyrighted work publicly." 17 U.S.C. § 106 (emphasis added).

Similarly, in *Somerson*, in finding equivalency between the plaintiff's right of publicity claims and the exclusive rights provided for in Section 106 of the Copyright Act, the court held that the "plaintiff's complaints are based on WWE reproducing the video recordings depicting him, preparing derivative works based on the video recordings of him, and distributing copies of these video recordings to the public, all of which are encompassed by copyright law." *Somerson*, 956 F. Supp. 2d at 1355; *see also Baltimore Orioles*, 805 F.2d at 675 (holding that the right of publicity claims by baseball players over telecasts and recordings of games depicting their performances are "equivalent to any of the rights encompassed in a copyright"). Thus, it is well established that where, as in this case, a plaintiff asserts a state law claim for violation of right of privacy and/or publicity against defendants who are doing no more than reproducing, distributing, and/or publicly performing, displaying, or "airing" a copyrighted work depicting a performance by the plaintiff, those state law claims are "equivalent" to exclusive rights under federal copyright law for purposes of copyright preemption.

Because it is clear that Plaintiffs' state law right of privacy/publicity claim against ESPN (i) falls within the general subject matter of copyright and (ii) involves rights granted under state law that are "equivalent" to the exclusive rights within the scope of federal copyright protection, Plaintiffs' right of privacy/publicity claim is preempted by the Copyright Act, and, consequently, the entire Complaint should be dismissed with prejudice.

B. PLAINTIFFS' CLAIMS AGAINST ESPN FAIL AS A MATTER OF LAW BECAUSE TENNESSEE'S RIGHT OF PUBLICITY ONLY PROHIBITS USE OF ANOTHER'S NAME, IMAGE, OR LIKENESS IN ADVERTISING, NOT THE AIRING OF WRESTLING BROADCAST FOOTAGE.

Under Tennessee law, an individual's right of publicity is codified in the Tennessee Personal Rights Protection Act ("TPRPA"). Tenn. Code Ann. § 47-25-1101 *et seq.* The TPRPA provides that "[a]ny person who knowingly uses or infringes upon the use of another individual's

name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services . . . without such individual's prior consent . . . shall be liable to a civil action." *Id.* § 47-25-1105(a). This Court has found that "Tennessee's common law and statutory rights of publicity are coextensive." *Gauck v. Karamian*, 805 F. Supp. 2d 495, 500 n.5 (W.D. Tenn. 2011); *see also Moore v. Weinstein Co., LLC*, No. 3:09-CV-00166, 2012 WL 1884758, at *30 (M.D. Tenn. May 23, 2012), *aff'd*, 545 F. App'x 405, 406 (6th Cir. 2013) ("Tennessee recognizes a statutory right of publicity under the TPRPA (as well as a coextensive common law right)."). Were there some discrepancy between a pre-existing common law right of publicity and the terms of the TPRPA, the common law would be preempted. *See Lavin v. Jordon*, 16 S.W.3d 362, 368 (Tenn. 2002) ("When there is a conflict between the common law and a statute, the provision[s] of the statute must prevail" (quoting *Graves v. Ill. Cent. R.R. Co.*, 148 S.W. 239, 242 (Tenn. 1912)).).

Tennessee federal courts have emphasized that the TPRPA is a narrow statute. *Id.* at 501 ("Tennessee's right of publicity is narrower than the Restatement approach adopted by other states."); *Apple Corps Ltd. v. A.D.P.R., Inc.*, 843 F. Supp. 342, 347 (M.D. Tenn. 1993) (stating that the TPRPA is "narrowly drawn"). It does <u>not</u> confer publicity rights on participants in broadcasts, including wrestling broadcasts; rather, the TPRPA "proscrib[es] only the unauthorized use of another's name or likeness <u>in advertising</u>." *Apple Corps.*, 843 F. Supp. at 347 (emphasis added); *see also* Tenn. Code Ann. § 47-25-1105(a). Tennessee federal courts have uniformly held that the TPRPA reaches only advertisements, regularly dismissing TPRPA claims that purport to reach anything else. *See e.g.*, *Clark v. Viacom Int'l, Inc.*, No. 3:12-0675, 2014 WL 1934028, at *15-16 (M.D. Tenn. May 13, 2014) (dismissing TPRPA claim because the

plaintiff had "fail[ed] to allege that the Defendants . . . used his name in connection with any advertisement"); *Gauck*, 805 F. Supp. 2d 502 n.7 (finding that "the causal connection that Plaintiff must show [for TPRPA protection] is the unauthorized use of her name or image in an advertisement or solicitation"); *McKee*, 2011 WL 1770461, at *12 (dismissing claim because "the TPRPA only prohibits use of an individual's likeness for advertising or endorsement purposes"); *Read v. Lifeweaver, LLC*, No. 2:08-CV-116, 2010 WL 1798704, at *11 (E.D. Tenn. May 5, 2010) (dismissing TPRPA claim of the plaintiff where a use was not "for endorsement purposes").

Here, Plaintiffs' Complaint is devoid of any allegation that ESPN used Plaintiffs' names, images, or likenesses in advertising, alleging only that ESPN "has been airing on television, the internet, and other media footage of Doug Gilbert's and/or Eddie Gilbert's past wrestling matches" (*i.e.*, their performances). (Compl. ¶ 17.) Thus, the alleged use of Plaintiffs' names and likenesses within their performances, and not in any advertising for such performances, does not violate Tennessee's right of publicity law. As such, Plaintiffs' sole claim for violation of their right of privacy/publicity fails as a matter of law, and, consequently, the entire Complaint must be dismissed with prejudice.

C. PLAINTIFFS' CLAIMS AGAINST ESPN ARE BARRED BY THE FIRST AMENDMENT AND THE TENNESSEE CONSTITUTION.

Plaintiffs' right of privacy/publicity claims against ESPN implicate the First Amendment and the Tennessee Constitution and are barred by both. As applied to assertions of a right of publicity, the Sixth Circuit has emphasized that "[t]here is an inherent tension between the right of publicity and the right of freedom of expression under the First Amendment." *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 931 (6th Cir. 2003). "This tension becomes particularly acute when the person seeking to enforce the right is a famous actor, athlete, politician, or otherwise

famous person whose exploits, activities, accomplishments, and personal life are subject to constant scrutiny and comment in the public media." *Id.* Therefore, where a state recognizes a right of publicity, courts should "balance the magnitude of the speech restriction against the interest in protecting [the plaintiff's] intellectual property right." *Id.* at 937; *see also Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 626 (6th Cir. 2000).

The Sixth Circuit has considered whether the First Amendment bars right of publicity claims outside the realm of tangible commercial products and has held that the First Amendment prohibited enforcement of the alleged publicity right. *See, e.g.*, *Moore v, Weinstein Co., LLC*, 545 F. App'x 405, 409 (6th Cir. 2013) (First Amendment bars right of publicity claim arising out of a movie); *ETW Corp.*, 332 F.3d at 936-37 (First Amendment bars right of publicity claim arising out of painting of Tiger Woods); *Ruffin-Steinback*, 267 F.3d at 462 (First Amendment bars right of publicity claim arising out of a television mini-series). None of these cases, however, involve the airing of footage of nonfiction broadcasts that depict real events.

Other courts have addressed how to balance the First Amendment and the right of publicity in the nonfiction context. In such cases, a plaintiff is attempting to impact truthful speech solely on the basis of its content (*i.e.*, because it includes the plaintiff's name, image, or likeness). *See, e.g.*, *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 972 (10th Cir. 1996). Such content-based regulation of speech typically triggers the strictest constitutional scrutiny. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). As a result, the two most important factors courts identify are (i) whether the challenged content is commercial speech and (ii) whether it relates to a matter of public interest. These questions are critical—often dispositive—because while purely "commercial" speech is afforded less protection, freedom of speech and the press protects with particular zeal the publication of facts

and matters in the public interest. *See, e.g.*, *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988). Applying these factors to the airing of wrestling broadcasts such as those at issue in this case makes clear why the First Amendment would bar any right of publicity claim.

First, the "airing" of footage of past wrestling matches "on television, the internet, and other media" is not commercial speech. "Commercial" does not mean "for money" in this context. Rather, "commercial speech" means "speech which does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (internal quotations omitted); *see also Nichols v. Moore*, 334 F. Supp. 2d. 944, 955-56 (E.D. Mich. 2004). Airing footage of wrestling events does not propose any kind of commercial transaction—it depicts a real event and distributes desired speech to the public—and, thus, it is not "commercial speech" for purposes of First Amendment jurisprudence.

Second, it is well-settled that the airing of wrestling matches concerns matters of public interest. *See, e.g.*, *Dryer v. Nat'l Football League*, No. 09-2182 (PAM/FLN), 2014 WL 5106738, at *15 (D. Minn. Oct. 10, 2014) ("Plaintiffs' play in the NFL was and continues to be the subject of public interest."); *Gionfriddo v. Major League Baseball*, 114 Cal. Rptr. 2d 307, 316 (Cal. Ct. App. 2001) ("[T]he accomplishments . . . of those who have achieved a marked reputation or notoriety by appearing before the public such as actors and actresses, professional athletes, public officers, . . . may legitimately be mentioned and discussed in print or on radio and television."). The Sixth Circuit has relied upon the Restatement (Third) of Unfair Competition in finding that the right of publicity "does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses." *Ruffin-Steinbeck*, 267 F.3d at 461 (quoting Restatement (Third) of Unfair Competition § 47); *see also ETW Corp.*, 332 F.3d at 930 ("The

-15-

use of a person's identity primarily for the purpose of communicating information or expressing ideas is not generally actionable as a violation of a person's right of publicity" (quoting same).).

The Northern District of Georgia's analysis in *Somerson v. World Wrestling Entm't, Inc.*, 956 F. Supp. 2d 1360 (N.D. Ga. 2013) is particularly on point with the First Amendment implications in this case.[5]  In *Somerson*, the court recognized a "newsworthy" exception to the right of publicity, citing three factors to consider in determining whether a particular fact is newsworthy: (1) "the depth of the intrusion into the plaintiffs [sic] private affairs"; (2) "the extent to which the plaintiff voluntarily pushed himself into a position of public notoriety"; and (3) "whether the information is a matter of public record." *Id.* at 1367 (quoting *Toffoloni v. LFP Publ'g Group, LLC*, 572 F.3d 1201, 1208 n.2 (11th Cir. 2009)).  There, with respect to the first and third factor, information contained on WWE's website did not intrude into "Pretty Boy" Doug Somers' private affairs and was a matter of public record; it was, in essence, a timeline of Somers' wrestling activities. *Id.*  With respect to the second factor, Somers had alleged in his complaint that he began working as a "professional" wrestler in 1967. *Id.*  Thus, the *Somerson* court continued, "[t]he use of the term professional implies that plaintiff was wrestling for profit and for a living, versus as a hobby or an amateur." *Id.*  In other words, Somers injected himself into the public eye "by work[ing] under the name and persona of 'Pretty Boy' Doug Somers [and] invest[ing] years of his life developing and maintaining this persona, and this persona is known and loved worldwide." *Id.*  As such, the *Somerson* court concluded that the information

---

[5] This opinion arises from the same underlying facts as *Somerson v. McMahon*, 956 F. Supp. 2d 1345 (N.D. Ga. 2012) ("*Somerson 1*") and resulted from the plaintiff being permitted to amend his complaint to include additional allegations.  Whereas *Somerson 1* focuses on copyright preemption, this opinion focuses on First Amendment implications.

contained on WWE's website was a matter of public interest and, thus, protected by the First Amendment.

Similarly, in this case, the airing of the Gilberts' past wrestling footage in various mediums in no way intrudes into the Gilberts' private affairs and is certainly a matter of public record. Further, as Plaintiffs allege in their Complaint, they are "well known <u>professional</u> wrestlers who come from a family of wrestlers" and have performed under their own names "as well as other <u>personas</u>" for a multitude of wrestling associations and leagues. (Compl. ¶¶ 8-11 (emphasis added).) Thus, just as in *Somerson*, Plaintiffs have injected themselves into the public eye, which severely diminishes their right of publicity, if any, in the wrestling footage. As such, because the facts that underlie Plaintiffs' right of privacy/publicity claims are "newsworthy," Plaintiffs' claims are barred by the First Amendment.

Finally, "the Tennessee Supreme Court has held that its protections of the freedoms of speech and press are '<u>substantially stronger</u>' than the First Amendment because '[Article I, Section 19 of the Tennessee Constitution] is clear and certain, leaving nothing to conjecture and requiring no interpretation, construction, or clarification.'" *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 n.6 (6th Cir. 2013) (emphasis added) (quoting *Press, Inc. v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978)); *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 288 (Tenn. Ct. App. 2007). Thus, even if this case presented a close call under the First Amendment (and it does not), Plaintiffs' state law cause of action for right of privacy/publicity is separately barred by the Tennessee Constitution and must be dismissed.

## V. CONCLUSION

Pursuant to Rule 12(b)(6), Plaintiffs' Complaint fails to state a claim upon which relief can be granted for three reasons: (1) Plaintiffs' claims are preempted by the Copyright Act; (2)

Tennessee's right of publicity only prohibits unauthorized use of an individual's name, image, and likeness in advertising, not the airing of footage of wrestling performances; and (3) Plaintiffs' claims are barred by the First Amendment and the Tennessee Constitution. As such, for these reasons, and the reasons set forth in more detail above, ESPN respectfully requests that the Court enter an order dismissing Plaintiffs' Complaint with prejudice.

        Respectfully submitted,

/s/ Jeffrey L. Allen
Samuel D. Lipshie, BPR No. 9538
Jeffrey L. Allen, BPR No. 26782
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Email:  slipshie@babc.com
Email:  jallen@babc.com
Direct:  (615) 252-2332
Facsimile:  (615) 252-6332

*Attorney for Defendants ESPN, Inc. and ESPN Classic, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been forwarded to counsel of record via the Court's electronic filing system or, if not listed therein, via email:

      Eugene J. Podesta, Jr.
      BAKER, DONELSON, BEARMAN, CALDWELL
      & BERKOWITZ
      165 Madison Avenue, Suite 2000
      Memphis, TN 38103
      Email: gpodesta@bakerdonelson.com

      Jerry S. McDevitt
      Curtis B. Krasik
      K&L GATES LLP
      210 Sixth Avenue
      Pittsburgh, PA 15222
      Email: jerry.mcdevitt@klgates.com
      Email: Curtis.Krasik@klgates.com

      Robert Steve Beal
      BEAL LAW OFFICE
      22 Monroe Avenue
      Lexington, TN 38351
      Email: beallawoffice@gmail.com

      William B. Ryan
      DONATI LAW FIRM
      1545 Union Avenue
      Memphis, TN 38104
      Email: billy@donatilaw.com

      Malcolm B. Futhey, III
      FUTHEY LAW FIRM PLC
      Poplar Avenue
      Memphis, TN 38104
      Email: Malcolm@futheylawfirm.com

on this the 6th day of May, 2015.

      /s/ Jeffrey L. Allen
      Jeffrey L. Allen

7/3638370.1